**Ervin G. OTTE, Nancy S. Otte, Brian Otte, Alan Otte, Robert Hite and Martha Hite, Appellants (Defendants Below),**

v.

**Ralph M. OTTE and Geraldine S. Otte, assignees of Production Credit Association of the Fourth District f/k/a Farmers Production Credit Association of Scottsburg, Appellees (Plaintiffs Below).**

No. 47A04–9501–CV–30.

Court of Appeals of Indiana.

Aug. 29, 1995.

Rehearing Denied Oct. 24, 1995.

Anne Marie Sedwick, Lorch & Naville, New Albany, for appellants.

William C. Potter, II, Marcia E. Roan, Kroger, Gardis & Regas, Indianapolis, for appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Ervin and Nancy Otte appeal from the trial court's order directing the Lawrence County Sheriff to sell their farm.

We affirm.

### ISSUES

I. Whether the evidence is sufficient to support the trial court's conclusion that the transfer of the farm from Ervin and Nancy to Nancy's parents and back to Nancy and her sons constituted a fraudulent conveyance.

II. Whether the trial court erred in ordering the farm sold.

### FACTS

During the 1970's, Ervin and Nancy Otte executed four promissory notes, co-signed by Ervin's parents, Francis and Ruth Otte, in favor of Farmers Production Credit Association of Scottsburg. The notes were secured by mortgages on several pieces of real estate, including Ervin's and Nancy's farm. Apparently, Ervin and Nancy defaulted on the promissory notes because on April 28, 1982, Farmers filed a complaint against Ervin, Nancy, Francis and Ruth in the Lawrence County Circuit Court seeking to foreclose on the mortgages.

Thereafter, on August 20, 1982, Nancy filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. Nancy provided for the debt owed to Farmers in her Chapter 13 creditor payment plan, and Farmers objected. Later, Farmers and Nancy entered into a settlement agreement

providing for payment to Farmers outside the Chapter 13 plan. On May 23, 1983, the United States Bankruptcy Court for the Southern District of Indiana entered an order confirming Nancy's amended Chapter 13 plan. With respect to the settlement agreement between Farmers and Nancy, the bankruptcy court stated as follows:

> On February 22, 1983, this Court approved a Settlement Agreement between the Debtor and the Farmers' Production Credit Association of Scottsburg, and the Court specifically finds that the real estate that is jointly held by Debtor and her husband is not property of the estate and that notice and hearing to all creditors in general is not necessary for there to be sales of the real estate pursuant to the Settlement Agreement.
>
> \* \* \* \* \* \*
>
> The Debtor is authorized and ordered to take all necessary steps to consummate the Settlement Agreement between the debtor and the Farmers' Production Credit Association of Scottsburg.

(R. 99–100).

Nancy did not make the payments as required under the settlement agreement with Farmers, however, because on September 21, 1987, the Lawrence County Circuit Court entered summary judgment in favor of Farmers and against Ervin, Nancy, Francis, and Ruth. The trial court granted Farmers a judgment for $180,797.71, and ordered that the mortgage on Ervin's and Nancy's farm be foreclosed, finding in part as follows:

> [t]hat on or about August 20, 1982, Defendant, Nancy S. Otte, filed a voluntary petition in bankruptcy, in the United States Bankruptcy Court, Southern District of Indiana, New Albany Division, under Cause No. 82–0146 NA. Upon discharge, Nancy S. Otte should not be held personally liable for any deficiency resulting from the foreclosure sale of the above-described real and personal property.

(R. 20).

Thereafter, Ervin's and Nancy's farm was offered for sale at a judicially ordered sheriff's sale on November 10, 1987, where Farmers purchased the farm, in effect from itself, leaving a deficiency of $125,374.75. Farmers sought to satisfy the deficiency by commencing execution proceedings against the farm owned by Francis and Ruth. To preserve Francis's and Ruth's fee simple ownership interest in the farm, Ralph Otte (Ervin's brother and another son of Francis and Ruth) and Ralph's wife, Geraldine, purchased Farmers' judgment against Ervin, Nancy, Francis, and Ruth for the $125,374.75 deficiency due Farmers. Farmers' successor-in-interest, Production Credit Association of the Fourth District (PCA), assigned the judgment to Ralph and Geraldine, and recorded the assignment in the Office of the Recorder of Lawrence County on June 24, 1988.

On August 1, 1988, the bankruptcy court entered an order discharging Nancy "from all debts provided for by the plan. . . ." (R. 102).

Pursuant to the dictates of the Federal Agricultural Credit Act, PCA, which held title to Ervin's and Nancy's farm, had to offer to sell the farm to Ervin and Nancy, who had a right of first refusal. Ervin and Nancy obtained approximately $64,000.00 to purchase the farm from Nancy's parents, Robert and Martha Hite. Robert Hite submitted a personal check to PCA dated August 12, 1988, in the amount of $63,400.00. Thereafter, on August 15, 1988, PCA executed a Corporate Warranty Deed conveying the farm to Ervin and Nancy. On the same date, Ervin and Nancy conveyed their farm to Robert and Martha "for and in the consideration of one dollar and other valuable considerations." (R. 188). The same day, upon receiving title to Ervin's and Nancy's farm, Robert and Martha sold the property back to Nancy and her two sons, under a contract for the sale of real estate. The terms of the contract called for $10.00 upon execution of the agreement with the balance to be paid by Nancy and her sons on or before August 15, 1990.[1]

---

1. Because the copy of the contract for the sale of the farm is of poor quality, it is not possible to discern whether the balance due on the contract is owed on or before August 15, 1990, or August 15, 1998.

On December 28, 1990, Ralph and Geraldine filed a "Motion for Order Determining Validity and Priority of Judgment Lien of Ralph M. Otte and Geraldine S. Otte and Motion for Order Permitting Execution Upon Real Estate and Setting Sheriff's Sale Upon Execution" in the Lawrence County Circuit Court case. (R. 26). Essentially, in an attempt to satisfy the approximately $125,-000.00 deficiency judgment they now owned, Ralph and Geraldine requested the trial court to order Ervin's and Nancy's farm to be sold at a sheriff's sale.

In response, Nancy filed a petition to re-open her bankruptcy case on July 8, 1992, and filed a "Complaint Seeking to Enjoin Action in Violation of Discharge Provision and Order" against Ralph and Geraldine. (R. 145). Ralph and Geraldine moved for summary judgment in the bankruptcy court alleging that the undisputed material facts indicated that Nancy's 1988 bankruptcy discharge did not discharge her from the $125,-000.00 debt owed to Ralph and Geraldine because it was not "provided for" in her Chapter 13 creditor payment plan. Nancy filed a cross motion for summary judgment alleging that despite the fact she made payments directly to Farmers (now PCA), Nancy's plan, in fact, "provided for" that debt because the plan referenced the settlement agreement.

In its entry on the parties' cross-motions for summary judgment, the bankruptcy court concluded in pertinent part as follows:

1. Ralph and Geraldine may proceed in the Lawrence Circuit Court to enforce their judgment lien against real property held by Nancy and Ervin Otte as tenants by the entirety.

\* \* \* \* \* \*

3. A creditor may proceed to collect on a debtor's liability with respect to property owned as tenants by the entirety, when a pre-discharge judgment lien on that property exists. (Citations omitted).

4. The pre-discharge lien of Ralph and Geraldine Otte was neither erased nor destroyed by Nancy Otte's intervening bankruptcy. (Citations omitted).

5. As a matter of law, Ralph and Geraldine Otte are entitled to judgment in their favor on the Complaint seeking to Enjoin Action in Violation of Discharge Provision and Order.

(R. 150). Apparently the bankruptcy court's ruling was not appealed.

On December 17, 1992, Ralph and Geraldine, Ervin and Nancy, and Robert and Martha filed their evidentiary stipulations identifying the documentary evidence upon which the trial court was to base its determination of the validity and priority of the judgment lien held by Ralph and Geraldine in the Lawrence County Circuit Court. Following an oral argument, the trial court issued findings of fact and conclusions of law on September 23, 1994, determining that the bankruptcy court's order allowed Ralph and Geraldine to enforce their judgment lien against Ervin's and Nancy's farm in the Lawrence County Circuit Court. The trial court also concluded the transfers of the farm from Ervin and Nancy to Robert and Martha, her parents, and back to Nancy and her sons were fraudulent, and that, therefore, Ralph's and Geraldine's lien on the farm had priority over the interest asserted by Robert and Martha and Nancy and her sons. The trial court also ordered the farm to be sold at a Sheriff's sale and the proceeds applied to the deficiency judgment held by Ralph and Geraldine.

Additional facts will be presented in our discussion of the issues.

### DECISION

■ It appears the findings of fact and conclusions of law entered by the trial court were not requested by either party. In such a case, this court applies a two-tier standard of review. *Coffin v. Hollar* (1993), Ind.App., 626 N.E.2d 586, 589. The court first determines whether the evidence supports the findings and then determines whether the findings support the judgment. *Id.* Special findings and the judgment flowing therefrom will be set aside only if they are clearly erroneous. *Id.*

■ This Court will neither reweigh the evidence nor judge the credibility of the wit-

nesses. *Id.* Rather, this court will view only the evidence in the record which supports the judgment along with all reasonable inferences to be drawn therefrom. *Id.*

## I.

▮ Ervin and Nancy argue the evidence was insufficient to support the trial court's conclusion that the series of conveyances which took place on August 15, 1988, were fraudulent.

Prior to the enactment of the Indiana Uniform Fraudulent Transfer Act,[2] Ind.Code 32–2–1–14 provided that a conveyance of real estate "made or suffered with the intent to hinder, delay, or defraud creditors or other persons of their lawful damages" shall be void as to the person sought to be defrauded. Furthermore,

[t]he question of fraudulent intent, in all cases arising under the provisions of this act, shall be deemed a question of fact; nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration.

Ind.Code 32–2–1–18.

▮ Fraudulent intent may be inferred from the following indicia, or "badges of fraud," present in a given transaction:

1. the transfer of property by a debtor during the pendency of a suit;

2. a transfer of property that renders the debtor insolvent or greatly reduces his estate;

3. a series of contemporaneous transactions which strip a debtor of all property available for execution;

4. secret or hurried transactions not in the usual mode of doing business;

5. any transaction conducted in a manner differing from customary methods;

6. a transaction whereby the debtor retains benefits over the transferred property;

7. little or no consideration in return for the transfer;

8. a transfer of property between family members.

*Johnson v. Estate of Rayburn* (1992), Ind. App., 587 N.E.2d 182, 186. As no single indicium constitutes a showing of fraudulent intent per se, the facts must be taken together to determine how many badges of fraud exist and if together they amount to a pattern of fraudulent intent. *Id.*

With respect to the conveyances of Ervin's and Nancy's farm, the trial court found as follows:

7. On August 15, 1988, PCA executed a Corporate Warranty Deed conveying the 203.14–acre tract of real estate in Lawrence County, Indiana to Ervin and Nancy Otte. On the same date, Ervin and Nancy Otte immediately conveyed the property to Nancy's parents, Robert and Martha Hite. Upon receiving full title to the 203.24–acre tract of real estate, Robert and Martha Hite immediately sold the property back to Nancy Otte, as well as to her two sons, Brian and Alan under a contract for the sale of Real Estate, *without any consideration being paid.*

(R. 248). Ervin and Nancy contend "[t]he underlined portion of this Finding is contrary to the undisputed evidence in the record." Brief of Appellant at 29. In support of their contention, Ervin and Nancy state:

The Contract for the Sale of Real Estate between the Hites as sellers and Nancy, Brian and Alan Otte as buyers clearly states its consideration on its face [$63,400.00]. In addition, Nancy's affidavit states that the Hites provided the $63,400.00 needed to purchase the Real Estate from PCA, and includes as an exhibit a copy of the Hite's personal check made payable to PCA and reflecting PCA's endorsement.

Brief of Appellant at 29–30.

Ervin and Nancy mischaracterize the nature of the trial court's finding. The trial court did not find that no consideration was required under the contract for the sale of the farm between Robert and Martha and

---

2. The Indiana Uniform Fraudulent Transfer Act does not apply to a transfer made or an obligation incurred before July 1, 1994.

Nancy and her sons, nor did the trial court find that Robert did not provide the $63,-400.00 to PCA. Rather, the trial court found that no consideration had been "paid" on the contract for the sale of the farm, and the record supports that finding. Nancy's affidavit merely states that she and her sons "have made the payments contemplated for under the terms of the Contract ... [and] have attempted to repay [her] father...." (R. 217). As noted in FACTS, however, aside from the initial $10.00 down payment, the terms of the contract for the sale of the farm do not "contemplate payments." Rather, the contract provides only that the balance be paid by a date certain. Further, the evidence fails to reveal any receipts, cancelled checks, or other documentary evidence indicating that any payments, including the $10.00 initial payment, have, in fact, been made, or that the balance due has been paid in full. This lack of evidence gives rise to the reasonable inference, as the trial court concluded, that "there was no consideration" given. (R. 253).

Therefore, we cannot agree with Ervin's and Nancy's contention that the trial court's conclusion "which states the transfers of the real estate were without consideration is unsupported by the evidence and thus cannot stand," Brief of Appellant at 31, and we are unable to conclude that the trial court's findings are clearly erroneous.

■ In addition to the "lack of consideration" badge of fraud discussed above, the trial court found two other badges of fraud:

1. the conveyances were conducted in a manner different from the customary methods; and

2. the conveyances involved family members.

Accordingly, the trial court determined "[t]his concurrence of badges of fraud demonstrates a fraudulent conveyance from Ervin and Nancy Otte to Nancy Otte's parents, and then to Nancy and her sons." (R. 253). Ervin and Nancy argue, however, that the trial court's conclusion the conveyances were "conducted in a manner different from the customary methods" is without evidentiary support. We disagree.

In its findings of fact, as noted above, the trial court outlined the occurrence of three conveyances of the farm on the same day: first, PCA's execution of a warranty deed conveying the farm to Ervin and Nancy; then, two subsequent conveyances on the same day effecting transfers to and from family members. These facts certainly give rise to the reasonable inference that the conveyances were conducted in a manner different from the customary methods.

■ We find the evidence is sufficient to support the three badges of fraud identified by the trial court, and its conclusion that, in combination, such badges of fraud indicate the farm was fraudulently conveyed back and forth between Nancy's family members in an attempt to avoid Ralph's and Geraldine's interest. Therefore, we must decline Ervin's and Nancy's invitation to reverse the trial court's order setting aside the conveyances as void.

## II.

■ Ervin and Nancy next claim the trial court erred in ordering their farm sold at a sheriff's sale and the proceeds applied to the deficiency judgment owned by Ralph and Geraldine. Specifically, Ervin and Nancy argue that "[a]fter her discharge in bankruptcy on August 1, 1988, Nancy had no personal liability upon Ralph & Geraldine's deficiency judgment" because "Nancy's debts were discharged under the applicable bankruptcy law." Brief of Appellant at 23.

As noted in FACTS, on August 1, 1988, the bankruptcy court entered an order discharging Nancy "from all debts provided for by the plan...." (R. 102). Also as noted in FACTS, the bankruptcy court's order confirming Nancy's amended creditor payment plan referred to Nancy's settlement agreement with Farmers (later PCA), but specifically found that Ervin's and Nancy's farm was not property of the bankruptcy estate.

Citing Federal bankruptcy case law in an attempt to support their position, Ervin and Nancy argue she is not personally liable for the deficiency judgment owned by Ralph and Geraldine because the bankruptcy court's order confirming Nancy's amended creditor

payment plan referenced the debt owed PCA. Therefore, they posit, the plan "provided for" the debt and it has been discharged pursuant to the bankruptcy court's August 1, 1988, order.

Our review of the record indicates Ervin and Nancy advanced this same argument supported by the same case law to the bankruptcy court in 1992 when Nancy reopened her bankruptcy case and requested the bankruptcy court to enjoin Ralph's and Geraldine's pursuit of their deficiency judgment in the Lawrence County Circuit Court. That argument was unavailing, however, because the bankruptcy court specifically found that "the pre-discharge lien of Ralph and Geraldine Otte was neither erased nor destroyed by Nancy Otte's intervening bankruptcy." (R. 150).

■ Because the federal courts have original and exclusive jurisdiction in all bankruptcy matters, we are bound by the bankruptcy court's interpretation of its discharge order. *See Reich v. Reich* (1993), Ind.App., 605 N.E.2d 1178, 1182. *See also Hendrix v. Page* (1994), Ind.App., 640 N.E.2d 1081, 1083. Thus, Ervin and Nancy should have appealed the bankruptcy court's decision through the federal court system, as opposed to advancing substantive bankruptcy arguments in the state court system in an attempt to avoid the dictates of the bankruptcy court's order.

■ Next, Ervin and Nancy argue "that the trial court specifically stated in its [1987] Summary Judgment that Nancy was to have no personal liability and the Summary Judgment is now the law of this case." Brief of Appellant at 23. In support of their argument, Ervin and Nancy point to the Lawrence County Circuit Court's 1987 order granting Farmers' motion for summary judgment on its action to foreclose the mortgage on Ervin's and Nancy's farm which states in relevant part as follows:

[t]hat on or about August 20, 1982, Defendant, Nancy S. Otte, filed a voluntary petition in bankruptcy, in the United States Bankruptcy Court, Southern District of Indiana, New Albany Division, under Cause No. 82–0146 NA. *Upon discharge, Nancy S. Otte should not be held personal-*

*ly liable for any deficiency resulting from the foreclosure sale of the above-described real and personal property.*

(R. 20) (Emphasis added). Ervin and Nancy contend:

[t]he Summary Judgment did not put any conditions on Nancy's discharge. Nancy was subsequently discharged on August 1, 1988. The plain language of the Summary Judgment cannot be stretched to reach any other conclusion than that Nancy is not personally liable for the deficiency judgment because she received a discharge in bankruptcy.

Brief of Appellant at 24.

As authority for their "law of the case" argument, Ervin and Nancy cite *Landowners v. City of Fort Wayne* (1993), Ind.App., 622 N.E.2d 548, 549, *reh'g denied, trans. denied* as follows:

In general, facts established at one stage of [sic] proceeding, which were part of an issue on which judgment was entered ... are unalterably and finally established as part of the law of the case and may not be relitigated at a subsequent stage.

Brief of Appellant at 23. Actually, the passage states as follows:

In general, facts established at one stage of a proceeding, which were part of an issue on which judgment was entered *and appeal taken,* are unalterably and finally established as part of the law of the case and may not be relitigated at a subsequent stage.

*Landowners, supra* at 549 (emphasis added).

First, Nancy's potential discharge from Chapter 13 Bankruptcy was not an issue before the Lawrence County Circuit Court in 1987–especially in light of the bankruptcy court's exclusive jurisdiction over bankruptcy matters as noted above. Second, the Lawrence County Circuit Court's 1987 summary judgment was never appealed. Thus, Ervin's and Nancy's "law of the case" argument must fail.

■ At any rate, the law of the case doctrine is a discretionary rule of practice, and expresses the practice of courts generally to refuse to reopen what has previously

been decided. *Id.* A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances. *Id.* Thus, even if the summary judgment had been appealed, the Lawrence County Circuit Court was free to review and alter its 1987 decision at its discretion.

The trial court did not err in ordering Ervin's and Nancy's farm sold to satisfy Ralph's and Geraldine's deficiency judgment. Accordingly, we affirm.

RILEY and ROBERTSON, JJ., concur.